The next case today is Campamento Contra Las Cenizas and Penuelas, Incorporated et al. v. Puerto Rico Electric Power Authority et al. Appeal No. 201685, Union Trabajadoras de la Industria Electrica y Riego v. Puerto Rico Electric Power Authority et al. and Windmar Renewable Energy, Incorporated v. Puerto Rico Electric Power Authority et al. Appeal No. 20-17110. Attorney Agrate, please introduce yourself for the record and proceed with your argument. Attorney Agrate, we can't hear you. You appear to be muted. No. Okay. Thank you. I would like to focus on two issues which I think have been misunderstood by both the District Court and PREPA FOMB. The first one is that the ecoelectric and energy contracts, object of this case, are new contracts and not mere amendments. It is not Appalachian who say so, although we do. It is PREPA itself. Mr. Jose Ortiz, who was at the time of the filing of this contract with the Puerto Rico Energy Bureau and PREPA, filed them as new contracts. That was what he required from PREPA to approve. Mr. Ortiz was the chief executive officer of PREPA at the time. It is not like PREPA would like us to see that this was a mere officer of PREPA speaking outside the record and after the PREP in the name of PREPA. What difference does it make if it's a prior contract being assumed or a new contract being made? If it's a prior contract being assumed, the District Court, Bankruptcy Court has jurisdiction to approve or not. If it is a new contract, it does not require an approval from the court so we don't have jurisdiction to decide anything concerning that new contract at this stage. How does it help you to establish that, as I understand it, if it's a post-petition new contract, they, just like any other company, can go enter into it. They don't need any approval from the court. Yes, they would need approval from the Puerto Rico Energy Board. It's a full-fledged proceeding. Isn't that a separate issue between you and the board? Well, it's an issue between us and PREPA because PREPA is telling the District Court, Bankruptcy Court, that they are merely amending a contract and they are assuming a pre-petition contract. Help me out on this then. I understood that the Puerto Rico Regulatory Authority has reviewed this amended contract as a new contract, which was the way it was submitted by PREPA. PREPA cannot, at the same time, request the approval of PREP for a new contract. But if they've got both the court approval, which you say they didn't even need, and they have the regulatory approval, then what's your beef? I don't understand what your claim is. The procedures of the PREP would be different for new contracts and mere amendments. What is at issue here is whether the District Court had authority to enter into this questioning or approving this particular transaction. Did you argue before the regulatory authority that this was a new contract and those procedures should be followed? Well, because after all, as of today, as of today as we speak, there is no final determination from the PREP on this issue. That wasn't my question. My question was, when they went to the regulatory authority, did they present it as a new contract or as an amended contract? New contract. And aren't you saying that's correct? I think that's correct. It's a new contract. The new contract and the old contract are incompatible on the basic issue of what are the responsibilities and the risks of each party. Mr. Gray, I'm having trouble with understanding how your clients have been harmed by the fact that the Court approved the contract. If it was a new contract, you've just told us approval wasn't needed. And I thought, gee, then maybe the argument is being made that when you go to the Puerto Rican regulatory authority, you would get to start the proceeding all over again and you would win some delay. But in your answer to Judge Kayada, you've just disavowed that. You presented it as a new contract. They approved that. Now, mind you, you then asked them to reconsider. That's a separate argument. But I'm trying to see what harm your client suffered from the Court approval of these as assumed contracts. The issue of harm was raised as part of an argument of lack of standing that was raised by FOMB PREPA. And the Court determined that we had standing because we were... And they have abandoned that on appeal. So would you answer my question and not avoid it, please? The harm that my client has suffered is that it has been approved a contract by the Court, which, one, has no final approval from the PREP, and two, its operation would harm the operation of my client who is a competitor to EcoElectrica because my client sells electricity to PREPA just like Judge Swain had ruled your way and had said, this is a new contract. I'm not going to... It doesn't need to have been assumed. Okay? So she did exactly what you want. Then tell me how you would be in a different position today than you are in today. The different position is that the PREP or Puerto Rico Energy Bureau case would be open, completely open, and subject to the presentation of evidence and all other measures that protect my client in order to present its case. Okay. So what I hear you saying is because Judge Swain ruled one way, the procedures are different in the regulatory proceeding. But I didn't see in your brief any citation to any procedures and explanation of how they would be different, and I thought you just told me this was presented as a new contract. The issue is that PREPA presented the case as a new contract, and at the same time, in the Federal Court, argued that it's not a new contract, one. But the other thing is that if the case is analyzed in full by the PREP, and the case is still open at the PREP in the sense that there is no final decision, we will have the opportunity to present evidence at the PREP on the merits, on the antitrust issues, on the energy issues, which are issues that this court is not the forum, nor was Judge Swain. All those policy issues that are the PROMESA are kept in the hands of the Commonwealth Government. All those issues would be subject to analysis at the PREP, and they haven't been. Counsel, if I'm following your argument, the argument seems to be, well, it makes it more difficult for us to persuade the Regulatory Agency to reopen once the Title III Court has not only approved the assumption of the contracts, but using the business judgment rule has said, and there is no business judgment issue here. It was a proper exercise of the business judgment rule. I think that's what I'm hearing, but I still don't understand the argument. If you have antitrust issues and the agency chooses to address those, I'm not sure how Judge Swain's approval in any way stops you from our perspective is that, until today, we haven't had the opportunity to evaluate on the merits, on public policy, environmental, and economic. But that's an issue, Counsel, isn't that an issue between you and the Puerto Rico Regulatory Agency that really has nothing to do with the Title III Court? We think we have a right under Puerto Rico law to have substantive analysis of the contracts and the actions of PREPA and FOMI in this case, in all major contracts. We haven't had that opportunity. If the Judge Swain determination is held, then I see very difficult on the PREP part, although the case is not final, to go against a determination like that from Judge Swain. Why couldn't you have raised those issues before the Regulatory Commission? I have done and it's been, but I have no doubt and might be experienced more than you. The law is that the PREP will not go against any Judge Swain decision at this stage. That is why it's so important that that decision of Judge Swain, if it doesn't have to be taken by her because it's a new contract, be back in the hands of the PREP without the pressure of having made a determination. I'm now confused. I thought the regulatory proceeding was over except for an appeal. No, there are reconsideration motions on my part. Well, in other words, it's a completed proceeding and someone's asking it to be reconsidered, but they have conducted a proceeding, they've done what they need to do, and they've issued a judgment and you've now asked for it to be reconsidered. Well, I think, Your Honor, that they didn't comply with their own proceedings and that's one of the issues raised. Sure, but let me ask, in that proceeding that they conducted, did they ever say, we're only doing Procedure X instead of Procedure Y because we're bound by Judge Swain's ruling? At the time they acted, there was no Judge Swain ruling. How could it have hurt you? If Judge Swain hadn't approved this contract now, my client has the right to fully discuss this issue in the regulatory agency and that hasn't happened. Okay, so we're back to my question that you somehow think your motion before the agency for reconsideration has been made more difficult by Judge Swain's decision and then you have the problem of Judge Woodcock's question, well, why couldn't you raise all those issues earlier before they ruled? I raised those issues to Judge Swain. Okay, and no, no, no, no, you raised the issues before the Puerto Rican regulatory agency, they rejected it, and now you seem to want us to do something to undo what the Puerto Rican regulatory agency has done. Is that what this case is about? No, Your Honor, they haven't decided my motion for reconsideration, which was the first time that I had access to the PREP to make this argument because at the beginning the PREP tried this case only as a case between PREPA and Ecoelectrica and not permitting other participation. But that had nothing to do with Judge Swain's ruling, which hadn't even issued yet. Today, it has to do with Judge Swain's ruling because I don't see how, in practical terms, the PREP will go against Judge Swain on that particular ruling. It's a matter of the reality of the balance of powers under PREP, under PROMESA, and Judge Swain. Are we going to hear from someone else, is that? Yes, thank you, Mr. Agrate. We'll move on to the next counsel. Yes, Judge. Attorney Agrate, you should mute your audio and your video at this time, and Attorney Mendez-Kohlberg, if you could unmute and introduce yourself on the record to proceed. Good morning, Your Honors. May it please the Court, this is Jessica Mendez-Kohlberg on behalf of the Appellants, Unión de Trabajadores de la Industria Eléctrica y Riego UTIER, and with the Court's permission, I would like to reserve one minute of my time for rebuttal. Well, yes, I'll allow it, but I have to tell you, you had better get to the issues which are obviously of concern to the Court. Yes, yes, Your Honor, thank you. That's what I wanted to address first to Judge Calladas and yourself, Your Honor, questions about the difference between how does it affect if it's a new contract or if it's an amended contract, and let's remember that if it's an amended contract, then the allowance of the assumption by the Title III Court would mean that these contracts would be granted administrative expense priority, and in the case for our clients, the union, they are creditors of PREPA who would be affected in the distribution after the plan of adjustments is confirmed because first, UTIER has, as the FOMB has a line in its brief that says even if these are new contracts which didn't require her approval, they still would get administrative priority. That would be something that the Oversight Board would have to request after they, in a different motion, for the administrative expenses to be granted. Here, the first issue would be the assumption if these are new contracts or amended contracts. Okay, so this case is about the difference between it automatically being an administrative expense and the Board having to request that the bankruptcy court treat this as administrative expenses. That's what the difference is? It would be, it's one of the administrative expenses to other creditors, but also the standard in which these contracts should be evaluated if it's the balance of equities or if it's the business judgment standard because of the great impact of these contracts on the public interest, which is something that the District Court... Counsel, I'm sorry, I am not following you. If Judge Swain's approval is not required for new contracts, and your argument is this is a new contract, why does this whole discussion of what's in the public interest enter into it at all? Well, Your Honor, that would be if this Court determines that the assumption proceeds, but if it these are new contracts, and then they are not subject to assumption, then the process would be before the regulatory body, which is... And we were just told they were presented before the regulatory authority as new contracts. And that's one of the things that I wanted to clarify before this Court, is that first, the proceedings before the Energy Bureau are not over, and second, that the motions filed by Uthier and Windmer as well were motions for reconsideration and intervention that are still pending before the PREP. And what that means is that the Energy Bureau has not considered the arguments that have been raised regarding the environmental issues and the monopolies and all the issues that were presented in order to attack the approval of the contract. The PREP has not decided on those issues. Why didn't you argue those earlier? We did, Your Honor. We did argue before the PREP in our motion for reconsideration and intervention, but it's still pending before the Energy Bureau. Okay, so you have not been deprived of the opportunity to make those arguments. So again, what is this case about? It's about whether these contracts can be subject to assumption and then granting administrative expenses to these contracts if they are considered new contracts or amended contracts, depending on the decision of the Court. But as I said, Your Honor, if these contracts are considered new contracts, then the process would be only before the PREP where we could address the issues of also if there is a need for competitive bidding or not in these contracts. And as I mentioned, the environmental issues that has to be addressed. You just admitted you had the opportunity to present all of those issues to the Puerto Rican Regulatory Authority before Judge Swain took any action. So how is her action in any way interfering with your ability to have made those arguments to the administrative agency? Our issue before the District Court is the assumption, Your Honor. It would be the Do you have anything else to argue? Well, the issues that we wanted to stress to the Court were first the fact that these are new contracts and pay attention to the Ballester case, which I believe is clearly misunderstood in terms of how that case controls and allows this Court to conclude that even though the language of the contracts could state that there is an amendment still that doesn't preclude the Court from establishing that there was a tacit novation according to Puerto Rico law and that even though the aim of that case states that even though the aim of the of the contracts remain the same, still the arrangements chosen by the parties to achieve that aim was wholly distinct in order for the Court to establish that there was in fact a novation of the contracts. Could you please go back to the point on administrative expenses? Could you point us some section of the statute or authority that would say that the test is different for administrative expenses for an assumed rather than a new contract? I don't think that the test would be different in terms of the administrative expense for if it's assumed or if it's the motion for administrative expenses as well. I would point the Court to the fact of then the standard that the Court would apply in evaluating the contracts and what PREPA or the Oversight Board have to establish in order for the Court to approve those expenses considering the nature of these specific contracts. You're confusing me here. Are you saying that let's administrative expenses in scenario A is whether it's an assumed contract? Administrative expenses scenario B, it's a new contract. What provides, are you saying the standard that the board would need to or PREPA would need to satisfy to have certain expenses treated as administrative expenses would differ in those two scenarios? Not necessarily, Your Honor. When I talk about the standard is in terms of the contract itself and how would the Court address the nature of the motions? What motion? The motion for the assumption or even the granting of the administrative expenses, Your Honor. Counsel, I heard you say earlier that as you understood it there is no different test that is used to define administrative expenses between assumed contracts and new contracts. I just want to be sure that's what you said. I was actually referring more to... No, yes or no. Do you actually know the answer to the question? I'm sorry, Your Honor. Can you repeat the question? No. You were asked whether there was a different test which was used by the bankruptcy court as to whether something is classified as administrative expenses which would give it You gave an answer then that said to me that the test was the same test. Is that correct? I could not point out to a difference in terms of if it's granting the administrative expenses or the assumption rather than the difference between the nature of the contract and the balance of equities. All right. Thank you. Thank you. Thank you, Attorney Mendez. Please mute your audio and your video. Attorney DeSatnick, please unmute your audio and video and introduce yourself for the record to proceed with your argument. Good morning, Your Honors. May it please the court. My name is Daniel DeSatnick of the law firm Proskauer Rose LLP, and I represent the Oversight Board as Title III representative of PREPA, the appellee in this case. I appreciate the questions that Your Honors asked appellants here because I think it really gets to the heart of the matter. We're here today because PREPA moved to assume two major contracts that for decades have provided 40 percent of the power generation to Puerto Rico and her residents. On the other hand, appellants who are not parties to these contracts cannot even explain to you how they are harmed by this assumption. By assuming these contracts under Bankruptcy Code Section 365, PREPA is able to assure these critical power providers that it will timely pay real dollars for this energy and that if it fails to do so, they will have an administrative expense claim for unpaid amounts. And as Your Honors recognize, whether this was done through an assumption or as new contracts and as appellants conceded, the test is the same. Do these contracts benefit the debtor? And it's clear here that they do. So again, appellants cannot demonstrate any harm here. In exchange for PREPA assuming these contracts, PREPA was able to negotiate amendments to them that secure the island's most dependable and efficient source of power for the next 12 years, and it generates estimated savings of over $100 million per year, savings that PREPA will pass on to its ratepayers. The bottom line is that appellants concede that there is no other source for this power on the island. And their criticisms of these contracts are also unfounded because these contracts were independently approved by the Oversight Board as compliant with PREPA's Puerto Rico's energy policy. We submit that on this record, the Title III Court was correct, and it was certainly not clearly erroneous in approving PREPA's assumption. Counsel, yes, I have a question. Why did you then treat this as an assumption of the Title III contracts issue? Did it somehow make it a speedier process? What was the benefit to treating it as an assumption and bringing it to the Title III Court for approval? Yes, Your Honor, it did not make it an easier process. It actually made it a harder process. We have to go to the court and we have to seek assumption. It would have been much easier for us to have just entered into new contracts. Now, it's tempting to sit here today and to look at the novation objection that we received and try to solve backwards. But the reality is that these contracts have been in place for decades, and when we filed Title III, there were still many years left on the term of these contracts. So, what the Oversight Board does is it looks at the contracts that PREPA has and it says, these are critical contracts. We need to maintain them, but we think we can go back and we can negotiate amendments to them that achieve savings. That's exactly what we did. And so, when we amended these contracts, we looked at them and we saw that under Puerto Rico law, these are amended contracts, and as amended pre-petition contracts, we have to assume them under Section 365. Okay, and one of the odd things about your brief was there's a line in there that we could have just done these as new contracts. And then, that's it. There's no explanation. There's no authority. There isn't a site to a statute, a case, even a rationale. What are we to do with that? Yes, Your Honor. I'd say it's an odd sentence because it's an odd argument on their part that these are new contracts because that argument is totally self-defeating. Section 363, which is not incorporated into Title III of PROMESA, generally requires that if you enter into a contract outside the ordinary course of business, you have to seek court approval. Because that's not present in PROMESA and because of PROMESA Section 305, which prohibits the court from interfering with the debtor's property and revenues, which includes contracts, there's as new contracts. And the irony here is that if appellants are right and these are new contracts, they would have no ability to appear before the Title III court and object. And then, what about administrative expenses in that scenario? Yes, Your Honor. So, this administrative expense argument, it's a total red herring because as appellants admitted, whether we did this as assumed contracts or as new contracts, there'd be an administrative expense. And I also just want to talk about what an administrative expense is. All that means is that if we fail to timely pay our obligations, these contract counterparties would be able to, at the end of the bankruptcy, whenever we emerge, whenever that may be, they will get paid in full. It's just a priority claim. It just means who gets paid first. Now, if there is nothing stopping us today from entering into new contracts and paying them in full today, well, then this administrative expense doesn't put them in a better position than what we could do as new contracts. So, there's really no harm to appellants. And by providing our counterparties with this administrative expense, we were able to enter into these contracts on less burdensome terms because our counterparties are assured that we'll perform under them. Is there any chance that Puerto Rican Regulatory Authority has delayed its decision on the motion for reconsideration because of the pendency of this appeal? Absolutely not, Your Honor. We obtained the approval of PREB before we filed this motion. So, Mr. Gray's contention that PREB is just being deferential to the Title III Court, it just doesn't add up. I'd also like to mention that this rightness objection, which is based on its pure gamesmanship, because we filed the assumption motion on April 1st, and they only filed their motions for reconsideration for PREB a month and a half later on May 22nd. So, this was an attempt by them to manufacture a rightness issue where one doesn't exist. Yeah, I understand all of that, but why the delay? I'm sorry, Your Honor, the delay? Why has the agency not yet acted on the motion for reconsideration? So, my understanding is that delays are due to COVID-19. It has not been holding hearings on these matters. Okay, thank you. That answers the question. Thank you. Yes, Your Honor. So, did you have a question, Your Honor? I was going to ask my colleagues if they had a question before you proceeded. No, proceed. Okay, Your Honor, I want to briefly address this rightness point. Appellant's arguments that the PREB proceeding is preventing this from being right, it just fails, and the reason it fails is because the motion is right, because all elements for contract assumption under Bankruptcy Section 365 have been met. That is PREPA has presented a live, valid, and binding contract that it wishes to assume. These contracts are not hypothetical, and their obligations are not abstract. There is no legal impediment to either side's performance. The filing of this motion enabled appellants to object, which they did, and therefore a live case or controversy exists. That the effectiveness of these amendments are contingent on PREB approval is of no moment here because that approval was obtained. If it's taken away, that may render the amendments void and this motion moot, but as this Court observed in Barnstable, the possibility of future mootness does not negate current rightness. We have the green light today that the traffic light could turn yellow or red in the future does not stop the parties from proceeding forward now. The final point I just want to make on rightness is a practical point. In governmental projects of a certain scale, multiple approvals are often needed, and this Court has recognized that a debtor like PREPA must have the flexibility to run these processes in parallel. As this Court held in Riggs and recently in Algonquin, a separate and independent proceeding like the PREB proceeding is ripe so long as it removes a barrier to the ultimate approval of the project, and that rule makes eminent sense here. Appellants have announced that if PREB denies their reconsideration, they intend to exhaust every avenue for appeal, which could take years, and they do this fully aware that absent assumption, one of these contracts would have expired December 2020 and the other would expire March 2022. Appellants would thus have this Court hold the motion in abeyance and make Puerto Rico languish without contracts for almost half its energy on the mere possibility that appellants may prevail before PREB or on appeal. On the other hand, appellants suffer no prejudice from the assumption motion going forward because the Title III Court's order expressly makes assumption contingent on PREB's approval remaining final, and I think that's an important point because it goes to Mr. O'Grace's argument that the PREB is deferential to Judge Swain. The order makes it contingent on PREB's approval. All appellants' rights, whatever they may be before PREB, are preserved, so PREB can come down however they are not bound whatsoever by the Title III Court's ruling. Next, I want to address novation, and before I do, I just want to make a quick factual point. Mr. O'Grace says that Mr. Ortiz, the former CEO of PREPA, said that these are new contracts. That's a misquote of Mr. Ortiz. What he said is that these amended contracts contain new contractual obligations. That's a misquote of Mr. Ortiz. In any event, the contracts here are clear and plain on their face that these are amended and restated contracts, and that expressed intent makes these, as the Title III Court found, makes it unambiguous, so it's inappropriate for this court to look past the four corners of the contract and credit Mr. Ortiz's statement, which was simply not a legal statement and not meant for consumption by the court and certainly not affect what the counterparties to this contract believe. So, on novation, I just want to note that parties routinely amend and assume contracts in bankruptcy. The Bankruptcy Code does not require a take-it-or-leave-it approach to executory contracts. It encourages the parties to reach agreements that will further the debtor's reorganization, and that's exactly what happened here. PREPA, in compliance with its fiscal plan, renegotiated the contracts to achieve amendments that provided substantial savings and flexibility moving forward. Could you say what particular authority would you cite us to on the proposition that in addition to assuming a contract, you can materially change it in substantive ways and then assume it? Yes, Your Honor. We cite a line of cases for the proposition that a contract can be materially modified and still assumed in bankruptcy as a pre-petition contract. Those can be found in the Joint Appendix on pages 12 through 13. We also cite in our brief the case of Richmond Leasing. That's at 762 F.2D 1303. That's a Fifth Circuit case, and there the court approved the debtor's decision to assume an amended lease under Section 365. And I also just want to let you know that this is a common procedure, so common that in the bankruptcy case of Forever 21, there are actually procedures that the court put in place to allow the debtor to amend and assume contracts. This is not a controversial proposition that this is what debtors can do. So, Your Honors, I want to just return to what standard in Puerto Rico is for determining whether a contract is novated. And here, Puerto Rico law is clear that the will of the parties is the controlling factor in determining whether novation occurred. And for novation to occur under the Puerto Rico Civil Code, this requires the party's intent to be established conclusively and without any trace of doubt. And here, as I just mentioned, both contracts expressly state that the parties intend to amend and restate the pre-existing contracts, and that can be found on Joint Appendix pages 28 and pages 119. That expressed intent controls, and appellants have not cited a single case, and I'm not aware of any case in Puerto Rico law where the parties have expressly stated that they intend to amend a contract, and the court has nevertheless looked at the substance of the contract and said, no, a novation actually occurred here. Now, they do ask the court to to perform that test and to determine whether a tacit novation has occurred. But here, too, the Puerto Rico Civil Code requires that the new agreement be absolutely incompatible in all points with the original one, such that it constitutes a radical change in nature. The case law is clear that this type of novation is a drastic result that can only be produced when the parties are The contracts here extend the same fundamental relationship among the parties. Natergy continues to sell LNG to PREPA, and PREPA continues to purchase generating capacity from Ecoelectrica. While some of the pricing terms and mechanics were adjusted to improve flexibility and reliability, such amendments do not make the amended contracts incompatible in all points. They're not incompatible at all, because they do not alter the fundamental relationship between the parties. Your Honors, next I'll turn to the standard of review for contract assumption under Section 365. Here, all authorities agree, even the cases that appellants cite, that other than in exceptional circumstances, the standard for contract assumption is the business judgment standard. This means the court should defer to the debtor and approve the assumption so long as the contracts provide some benefit to the debtor and are not based on bad faith, whim, or caprice. Appellants advocate for the balance of equity standard on the basis that these contracts implicate important public policy questions, and we agree they do. But BILDISCO and its progeny do not recognize a freewheeling public policy exception to the business judgment standard. Instead, they only applied the balance of equity standards in commercial Chapter 11 cases, where Here, no federal policy is implicated, and no regulator has appeared to contest the assumption. All parties to the contract support the motion, and the only applicable regulator is a territorial regulator in PREB that has approved the contract. If this was the situation that called for a special standard, we submit the special standard would swallow the ordinary one. Now, balance of equities is a catchy phrase, but appellants seek to apply it in an unbounded manner. It has only been applied in contract rejections, because there the court can balance the harms to the contracting parties. The balance of equity test has only been done in contract rejections, because we need conflicting federal policies to sharpen the dispute and weigh the debtor's interest in rehabilitation on the one hand against the interest to the regulator on the other hand. Here, appellants are asking you to take into consideration the debtor's interest, the union's interest, the competitor's interest, rate payers, environmental groups. That's improper. That would transform this court into the arbiter of what is Puerto Rico public policy, and we submit that the business judgment test is the correct standard here. Thank you, your honors. Thank you. Thank you, attorney Disatnik. At this time, if you could mute your audio and your video, and attorney Mendez-Kohlberg, if you could unmute your device and reintroduce yourself, you have one minute of rebuttal. Yes, thank you. This is Jessica Mendez-Kohlberg on behalf of appellants. Your honors, I would like to clarify from the other side statements that when the contracts were submitted to the PREP, we can see on the joint appendix page 1269 that they were marked as new contracts, not an amendment when the form provides for it. That's one thing. The other thing with respect to the Ecoelectrica contract, joint appendix page 1154, is where they state that originally it was a conventional power purchase agreement that was converted into a tolling agreement, which makes it a substantial difference in the nature of the contract. That's why we pointed out to the case of Pallester, which analyzes Puerto Rico law in these terms, to say that even though the ultimate aim continues to be the same, the arrangements chosen to achieve this aim were distinct in a business sense. It's the same thing that is happening here, and the language of the contract stating to the amendment doesn't preclude the court to go further to establish that the circumstances surrounding the contracts and the arrangements are, in fact, an ovation that makes it a new business judgment to the balance of equities standard in case the court decides that there should be an assumption, because the Merant and the Vildisco cases did not focus on the Yes, the analysis centers on the underlying policies and their importance, and we can see in the appellee's brief the importance of this contract, just to say one thing, that PREPA serves and the contracts will serve 1.5 million rate payers, and that it's a matter that has an effect on the whole commonwealth of Puerto Rico, not just the effect of the cost. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the Court. God save the United States of America and this Honorable Court. Counsel, you may disconnect from the hearing.